UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID E. EDWARDS, | No. 2:11-cv-1725-EFB P |
| Plaintiff, | |
| v. | ORDER[1] AND |
| CLAREY, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. In the second amended complaint, he alleges that defendant Clarey subjected him to an unconstitutional strip search that was "excessive, vindictive, [and] harassing." ECF No. 16. Before the court are the parties' cross-motions for summary judgment. ECF Nos. 25, 26. For the reasons stated below, it is recommended that plaintiff's motion be denied and defendant's motion be granted.

**I.   Background**

This action proceeds on plaintiff's second amended and verified complaint. ECF No. 16.
/////

---

[1] The parties did not respond to the court's orders directing them to complete and return the form indicating either their consent to jurisdiction of the magistrate judge or request for reassignment to a district judge. Accordingly, the clerk will be directed to randomly assign this case to a district judge.

1

It alleges the following:

Plaintiff was assigned to the morning "pot cleaning" crew in the kitchen area of California State Prison, Solano ("CSP-Solano"). *Id.* at 5. On March 16, 2010, defendant, a CSP-Solano correctional officer, allegedly conducted an "illegal strip search" of plaintiff and other inmates as they left their job assignments. *Id.* at 10.

Plaintiff claims that the scope of the search was excessive because normally, when inmates left the kitchen area at the end of their shifts, the search consisted only of a pat down, a check of sack lunches, and occasionally a search with a metal wand. *Id.* at 5. Plaintiff claims that the search was also not justified because defendant admitted there was no probable cause, that nothing was missing from plaintiff's work area, and that he did not suspect plaintiff of concealing contraband. *Id.* In addition, plaintiff claims that the search was not conducted in a proper place. He claims he was made to strip in "a public hallway that is used by the female staff that work in the kitchen." *Id.* He claims to have suggested that defendant use an adjacent office for more privacy, but "defendant refused" and "arrogantly ordered plaintiff to remove his clothes in front of the other inmates." *Id.*

Plaintiff refers to California Code of Regulations, title 15, section 3287(b) which authorizes random, unclothed searches of inmates when "authorized by the institution head to prevent possession and movement of unauthorized or dangerous items and substances into, out of, or within the institution." *Id.*; *see also* Cal. Code. Regs. tit. 15, § 3287(b). Plaintiff claims that the March 16, 2010 search was unreasonable and therefore unconstitutional because it was not "authorized by the institution head" as required by section 3287(b). ECF No. 16 at 5.

On June 6, 2013, plaintiff moved for summary judgment. ECF No. 25. On June 19, 2013, defendant opposed plaintiff's motion and filed a cross-motion for summary judgment. ECF No. 26.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

1 to the determination of the issues in the case, or in which there is insufficient evidence for a jury
2 to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600
3 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*
4 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment
5 motion asks whether the evidence presents a sufficient disagreement to require submission to a
6 jury.

7     The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
8 or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to
9 "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
10 trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
11 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,
12 under summary judgment practice, the moving party bears the initial responsibility of presenting
13 the basis for its motion and identifying those portions of the record, together with affidavits, if
14 any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477
15 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving
16 party meets its burden with a properly supported motion, the burden then shifts to the opposing
17 party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);
18 *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

19     A clear focus on where the burden of proof lies as to the factual issue in question is crucial
20 to summary judgment procedures.  Depending on which party bears that burden, the party seeking
21 summary judgment does not necessarily need to submit any evidence of its own.  When the
22 opposing party would have the burden of proof on a dispositive issue at trial, the moving party
23 need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National*
24 *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters
25 which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-
26 24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a
27 summary judgment motion may properly be made in reliance solely on the 'pleadings,
28 depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

4

1  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

2  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

3  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

4  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

5  issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

6  Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

7  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475

8  U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

9  reasonable inferences that might be drawn from it could not support a judgment in favor of the

10 opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

11 genuine dispute over an issue that is determinative of the outcome of the case.

12     Defendant's motion for summary judgment included a notice to plaintiff informing him of

13 the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil

14 Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952,

15 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849

16 F.2d 409 (9th Cir. 1988).

17 **III.     Discussion**

18     The parties dispute whether the March 16, 2010 search violated plaintiff's Fourth

19 Amendment right to privacy.  For purposes of the Fourth Amendment, searches of prisoners must

20 be reasonable to be constitutional.  *Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010).  "The

21 test of reasonableness under the Fourth Amendment is not capable of precise definition or

22 mechanical application.  In each case it requires a balancing of the need for the particular search

23 against the invasion of personal rights that the search entails.  Courts must consider the scope of

24 the particular intrusion, the manner in which it is conducted, the justification for initiating it, and

25 the place in which it is conducted."  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

26 /////

27 /////

28 /////

5

Plaintiff contends he is entitled to summary judgment because no reasonable juror could find that defendant's actions were reasonable in light of the standard established by the Supreme Court in *Bell*. ECF No. 25 at 8. Defendant opposes plaintiff's motion and argues there is no dispute as to whether the search violated plaintiff's privacy rights. ECF No. 26-1 at 6.

Plaintiff first contends that the search lacked any justification because defendant admits he had no probable cause or suspicion that plaintiff had contraband concealed on his person. ECF No. 25 at 2, 5, 8. However, a search of an inmate need not be supported by "probable cause" or a particular suspicion to be justified. For example, a visual strip search serves a legitimate penological purpose where the inmate was "presented with the opportunity to obtain contraband or a weapon while outside of his cell." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). Here, plaintiff admits that inmates could smuggle food from the kitchen and that on at least one occasion, a metal ladle had gone missing from the kitchen area. *See* ECF No. 30 ("Pl.'s Decl.") ¶¶ 30-32, 42. Thus, plaintiff's assertion that the search was entirely unjustified is not supported by the record.

Moreover, defendant explains in a declaration submitted with his motion for summary judgment, that correctional staff is outnumbered during the morning kitchen shift. *See* ECF No. 26-4 ("Clarey Decl.") ¶ 19 (stating that there are only two line-level correctional staff assigned to the kitchen area, and that on March 16, 2010, plaintiff was one of six to eight inmates leaving his work assignment in the kitchen). Defendant also explains that it is his job, as the Main Kitchen Officer, to search inmates when they leave their work assignments in the kitchen area to ensure that they are not smuggling contraband. *Id.* ¶¶ 2, 4. Given the fact that the inmates had the opportunity to smuggle contraband while working in the kitchen area, coupled with defendant's directive to prevent such conduct, it is evident that the March 16, 2010 search furthered a legitimate correctional goal. Viewing the evidence in the light most favorable to plaintiff, no reasonable juror could conclude that the search was not justified.

Next, plaintiff contends that the search should have been conducted in a more private location. He claims he was made to strip in "a public hallway that is used by the female staff that work in the kitchen." ECF No. 16 at 5. Prisoners, however, have only a very limited right of

1  bodily privacy from guards of the opposite sex. *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th
2  Cir. 1993) (en banc); *see also Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985) (pat-
3  down searches of male prisoners by female guards does not violate privacy right); *but see Byrd v.*
4  *Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1146 (9th Cir. 2011) ("cross-gender strip
5  searches in the absence of an emergency violate an inmate's right under the Fourth Amendment
6  to be free from unreasonable searches."). Here, plaintiff was not searched by a member of the
7  opposite sex and there is no evidence that any person of the opposite sex even saw the search take
8  place. *See* ECF No. 26-5 ("Pl.'s Dep.") at 47:21-48-3 (admitting he did not see any women in the
9  area during the search); Clarey Decl. ¶ 13 (explaining that there is only one to two feet of
10 visibility into the breezeway entry hall from the kitchen). Plaintiff stresses, however, that a non-
11 custodial female employee *could* have witnessed the search, by either looking through the
12 window from the kitchen into the hallway or walking through the hallway itself. ECF No. 25 at
13 3; *see also id.*, Ex. 1 (Inmate Llavet's declaration, "Llavet Decl.") at 11 ("Anyone could have
14 come walking through at anytime, including the women who work with inmates in the kitchen").
15 The mere chance that a female kitchen employee could have witnessed this rare instance of an
16 unclothed body search, however, is not a violation of plaintiff's right to privacy. *See* Llavet Decl.
17 at 11 ("Strip searches are not a normal practice for inmates leaving the kitchen."); *see also*
18 *Michenfelder*, 860 F.2d at 334 (assignment of female guards to positions requiring "only
19 infrequent and casual observation, or observation at distance, and that are reasonably related to
20 prison needs are not so degrading as to warrant court interference").

21    Plaintiff also contends that the search should have been conducted in the office adjacent to
22 the hallway. ECF No. 25 at 3. He contends this would have saved him the "humiliation and
23 indignity" of being searched in the presence of other inmates and that defendant had no reason
24 "whatsoever" not to use the office. *Id.*; *see also* Pl.'s Decl. ¶ 37 ("There was no safety issue to
25 using the office as requested."). In response, defendant explains that conducting the search in the
26 office would not have been safe or feasible. He states that the hallway itself was not a very large
27 space, approximately ten feet long by five feet wide. Clarey Decl. ¶ 7. He adds that the adjacent
28 office consisted of two rooms, an entry room the size of a small walk-in closet, and the office

7

itself, which was only slightly larger. *Id.* ¶¶ 8, 19. Defendant states that if he and his partner had conducted the searches in the privacy of the office, it would have drawn their attention away from the remaining crew of inmates in the hallway, and caused the inmates to be unmonitored for longer than necessary. *Id.* ¶ 19. Given these potential security concerns, defendant's decision to conduct the searches in the hallway was not unreasonable. *See Michenfelder*, 860 F.2d at 333 ("[W]e will not question [prison officials'] judgment that conditions in [a prison unit] reasonably require searches outside the prisoners' cells in order to protect the safety of the officers conducting them."); *see also Thompson v. Souza*, 111 F.3d 694, 697, 701 (9th Cir. 1997) (approving an intrusive strip search conducted in view of jeering inmates).

Plaintiff suggests that defendant could have first released the inmates in the hallway and then searched him in private, thereby alleviating defendant's expressed security concerns. ECF No. 29, Nos. 58-63. If an inmate "can point to an alternative that fully accommodates [his] rights at de minimis cost to valid penological interests, a court may consider that as evidence" that the defendant's conduct was not reasonably related to a legitimate correctional goal, but rather, an "exaggerated response" to prison concerns. *Turner v. Safley*, 482 U.S. 78, 90 (1987). Under plaintiff's proposed "alternative," plaintiff would have been afforded more privacy than the other inmates searched that morning. Plaintiff's argument that defendant could have given him such special treatment, however, does not demonstrate that defendant's search procedure was an exaggerated response to prison concerns.

It is plaintiff who "bears the burden of showing [that defendant] intentionally used exaggerated or excessive means to enforce security." *Michenfelder*, 860 F.2d at 333. Yet plaintiff testified at his deposition that defendant's search was a non-contact visual exam, performed by an officer of the same sex at a distance of four to five feet, and that he remained clothed in his boxer shorts throughout. Pl.'s Dep. at 29:21-30:2, 30:18-31:5, 39:3-9.

Nevertheless, plaintiff contends that the search was unreasonable because it was not conducted in accordance with CDCR regulations. ECF No. 25 at 4; ECF No. 25-1 ¶ 8. The regulation to which plaintiff refers suggests that "[w]henever possible, unclothed body searches shall be conducted outside the view of others." Cal. Code Regs. tit. 15, § 3287(b). Here, it is

8

undisputed that the search took place in front of six to eight other inmates. But as discussed, it was not feasible to conduct the search in the more private confines of the adjacent office. The regulation to which plaintiff refers also states that random, unclothed searches should be "authorized by the institution head." Cal. Code Regs. tit. 15, § 3287(b). Defendant testifies that the completion of his Post Orders, which spell out his general and specific job duties, is the responsibility of the Warden.[2] Clarey Decl. ¶ 4. Defendant also attaches a copy of those Post Orders, which plainly authorize him to conduct unclothed body searches of inmates in the hallway as they leave their work area. *Id.*, Ex. A at 9.[3] Thus, plaintiff's contention that the search did not comply with section 3287(b) lacks merit. Assuming the search needed to so comply in order to pass constitutional muster, defendant has shown that it did. And regardless of whether defendant's search was conducted "exactly" in accordance with CDCR guidelines, or in the way the searches were usually done, there is still no evidence that defendant employed "exaggerated or excessive means" in conducting the search. *See Thompson v. Souza*, 111 F.3d at 700.

In sum, plaintiff failed to meet his burden on summary judgment of demonstrating that defendant's search violated his Fourth Amendment right to privacy. Defendant, on the other hand, has shown that there is not even a genuine dispute as to whether the search violated

---

[2] Plaintiff claims to dispute defendant's representation in this regard, but cites to no evidence to the contrary. *See* ECF No. 28 at 3; ECF No. 29 ¶ 6.

[3] Plaintiff attached a copy of the Post Orders to his own motion for summary judgment. *See* ECF No. 25, Ex. 3. Yet he objects to defendant's reliance on the document because it is hearsay and because although space is provided on the document for signatures, it is unsigned. *See* ECF No. 31 ("Motion to Strike"). Plaintiff's objections are overruled. The Post Orders fall within the public records exception to the hearsay rule and are presumptively trustworthy. *See* Fed. R. Evid. 803(8)(A)(i) (excepting a record or statement from the rule against hearsay if it sets out the activities of a public office); *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997). Moreover, the fact that the copy of the Post Orders is unsigned does not render it inadmissible or diminish its probative value. On its face, the purpose of the signature block on the Post Orders is to document that certain prison officials "have read and thoroughly familiarized [themselves]" with its contents. Clarey Decl., Ex. A at 12. The fact that defendant's copy of the Post Orders lacks these signatures is of no evidentiary significance. What matters is whether the copy of the Post Orders was properly authenticated. Here, defendant properly authenticated the Post Orders in his sworn declaration. *See* Clarey Decl. In addition, defendant responded to plaintiff's objection by submitting the declaration of the custodian of records, who swears that the document is a "true and accurate copy of CSP-Solano's Post Orders for the position of Main Kitchen Officer, in effect in March 2010." ECF No. 33-1.

plaintiff's right to privacy. The evidence demonstrates that defendant's search was reasonably related to the legitimate penological interest in preventing inmates from smuggling contraband within the prison.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall randomly assign a United States District Judge to this action.

Further, IT IS HEREBY RECOMMENDED that plaintiff's motion for summary judgment and motion to strike (ECF Nos. 25, 31) be denied, defendant's cross-motion for summary judgment (ECF No. 26) be granted, and the Clerk of the Court be directed to enter judgment in defendant's favor and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE